UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Tim Martin,

          Plaintiff,

   v.

AutoZone, Inc.,

          Defendant.

Case No. C2-CV-04-213
JUDGE GREGORY L. FROST
Magistrate Judge Abel

## OPINION & ORDER

Currently before the Court is Defendant AutoZone, Inc.'s ("AutoZone") motion for summary judgment. (Doc. # 30). Plaintiff Tim Martin ("Martin") did not file a response, and the motion is now ripe for review.

### I. BACKGROUND

AutoZone is a discount auto parts retailer with stores located across the United States, including Ohio. (Doc. # 30 at 1). AutoZone's principal place of business is in Nevada. (Doc. # 22 at ¶ 2). AutoZone hired Martin, an Ohio resident, as a shipper at an AutoZone distribution center in Zanesville, Ohio on June 12, 2000. (Martin Dep. 34). At the time of his hiring, AutoZone provided Martin with a copy of its employee handbook, which outlined AutoZone's policies and procedures relative to employment matters. *Id.* at 35-36. Martin signed an acknowledgment form indicating that he had read and understood AutoZone's employee handbook. *Id.*; *Id.* at Exs. A-5, A-8. Martin acknowledged that if he violated one of AutoZone's policies, immediate termination may result. *Id.* at 36, 41-43.

**A.**     **ARMY RESERVES**

Prior to working at AutoZone, Martin was a generator mechanic in the Army. *Id.* at 19. He left the Army in April 1998 because he hurt his right shoulder–namely, he tore his rotator cuff and had a loose joint. *Id.* at 20, 130. However, the Army placed him on reserve duty. Thus, once he began working at AutoZone, he was required to take time off in order to satisfy his military duties. *Id.* at 25-26. Specifically, Martin had to report one weekend a month as well as two scheduled weeks during the year. *Id.* at 26. Martin knew that AutoZone's policies required him to inform AutoZone as soon as he knew when his reserve duty had been scheduled. *Id.* at 56. Martin was also aware of the fact that any leaves of absence for military duties were unpaid. *Id.* Martin testified that AutoZone always allowed him to take the requisite time off to fulfill his military obligations and that AutoZone always treated him fairly. *Id.* at 27, 57, 73, 80, 82, 107, 108, 117, 122.

Because of his shoulder injury, Martin had to visit a doctor before reporting for duty. *Id.* at 57, 109-110, 126. Martin's physician was Dr. Klein. ("Klein"). *Id.* at 58. During those pre-reporting visits, Klein would examine Martin's shoulder and prescribe restrictions if necessary. *Id.* Martin knew that when he visited Klein for military restrictions, he was to go on his own time. *Id.* at 40, 60-61. If he had to go while he was at work, he was to clock out and AutoZone would not pay him for the time it took him to go to Klein's office and obtain the paperwork. *Id.*

**B.    FMLA LEAVE**

Martin first took FMLA leave at the end of September 2001 to have hernia surgery. *Id.* at 87-88; Id. at Ex. A-20. He testified that AutoZone approved his leave requests without incident, and he also testified that AutoZone did not treat him any differently upon his return at the end of October 2001. *Id.* at 88-89. Martin's supervisors always treated him fairly. *Id.* at 65-

2

68, 89, 93, 94, 107.

Martin also requested and received permission to utilize FMLA leave in October 2002 to help his mother fight cancer. *Id.* at 112-114. Martin stated that he did not have any problem getting the leave approved . *Id.* at 53, 54, 114. Additionally, Tom Snyder ("Snyder") was Martin's supervisor at that time. *Id.* at 54-55, 196. Martin testified that Snyder was sympathetic to his situation and treated him fairly. *Id.* at 114, 196.

**C.     WORKERS' COMPENSATION**

As noted above, Martin originally injured his right shoulder when he was in the Army. *Id.* at 130. Martin also sprained his right shoulder on July 3, 2002 at work at AutoZone while lifting and stacking totes on the tote line. *Id.* at 45-51, 99, 100. Martin went to the emergency room immediately after the accident, and shortly thereafter sought treatment from Klein, the same doctor who was treating his shoulder injury from the Army. *Id.* at 58. Klein prescribed certain work restrictions for Martin–namely light duty and restricted hours–as well as physical therapy. *Id.* at 47, 49,101-104.[1] Moreover, Martin understood that each time he visited Klein for his shoulder relative to his position at AutoZone that he was to have Klein fill out a physical capabilities form and that he was return the form to Denise Eminheizer ("Eminheizer"), the distribution center's safety manager. *Id.* at 48, 65, 66, 143, 144. This minimized the risk of additional injury because AutoZone would know exactly what Martin's restrictions were. *Id.* at 48, 143, 144. Martin admitted that AutoZone always honored those restrictions and allowed him to attend physical therapy appointments. *Id.* at 49, 50, 101-104.

---

[1] The military restrictions differed from Martin's work restrictions given the nature of his duties for each position. *Id.* at 57.

Because the shoulder injury was work-related, Martin filed a workers compensation claim and received benefits. *Id.* at 46. As a result, Martin was paid, or "on the clock" when he visited Klein for restrictions related to the July 3, 2002 injury. *Id.* at 48-49.

**D.     EVENTS OF AUGUST 18, 2003**

On August 15, 2003, five days before he was to report for his reserves duty, Martin called off of work because of severe shoulder pain. *Id.* at 136. Accordingly, Martin's wife took him to see Klein. *Id.* at 137-38. Klein gave Martin a physical capabilities form listing Martin's work restrictions to give to AutoZone. *Id.* The form did not restrict Martin's hours. *Id.* at 140. Martin also had Klein fax his wife a separate form regarding his military restrictions. *Id.* Over the weekend, he lost Klein's fax about his military restrictions. *Id.* at 145-146.

Martin reported to work on August 18, 2003. *Id.* at 144. When he arrived, he approached Snyder and "told him that [he] needed to go to the doctor." *Id.* He did not tell Snyder that the purpose of his visit was to get the military restrictions form, he did not clock out, and he did not have an appointment. *Id.* at 145, 147, 150-152. Martin knew he was to take care of military business on his own time. *Id.* at 145. It took him roughly thirty minutes to go to Klein's office, obtain the form, and return to work. *Id.* at 158.

Upon his return, Snyder approached him and told him that he needed to sign a Daily Attendance Report ("DAR") indicating why he had missed work that morning. *Id.* at 159-60. The DAR stated that Martin told Snyder "he had an appointment with occu [sic] doctor at 8:30 about his shoulder." *Id.* at Ex. 40. Martin signed the form knowing that false statements could result in immediate termination. *Id.* at 42-43, 161.

Later that day, Eminheizer asked Snyder about Martin's work restrictions. (Snyder Dep.

4

113). Snyder told Eminheizer that Martin had been to the doctor that morning, but that he was unsure about Martin's restrictions because Martin did not give him a physical capabilities form when he returned from Klein's office. *Id.* at 115-116.

After speaking with Eminheizer, Snyder found Martin and inquired why Martin had gone to Klein's office that morning. (Martin Dep. 169-170). Martin responded that he went to get his military restrictions. *Id.* He also informed Snyder that he had forgotten to clock out before he left for Clark's office. *Id.*

Apparently, either Snyder or Eminheizer told Roger Clark ("Clark"), AutoZone's loss manager, about Martin's visit to Klein's office, because Clark approached Martin that afternoon and asked him to give a statement about his trip to see Klein. *Id.* at 167, 172. Martin's statement indicated that he had not told Snyder that he had an appointment to see Klein, but also said that he had told Snyder he had to go to get his military paperwork. *Id.* at Ex. 43. Thus, his statement was in direct contradiction with his DAR. *Id.* at 190-191. When Clark inquired into this contradiction, Martin indicated that he had not read the DAR before he signed it. *Id.* at 161. Martin said Clark treated him fairly when he questioned him. *Id.* at 179.

Clark forwarded Martin's DAR and statement to Tim Harrison ("Harrison") at the AutoZoner's Relations Department at the Store Support Center in Memphis, Tennessee. (Harrision Decl. at ¶¶ 1, 14). Harrison was charged with reviewing disciplinary issues and making recommendations regarding whether discipline up to and including termination was warranted. *Id.* at ¶2. Harrison reviewed Martin's file, which contained the DAR and Martin's statement but was apparently devoid of his FMLA, workers' compensation, and military leave documents. Harrison then "determined that Mr. Martin's contradictory statements constituted a

5

violation of AutoZone policy which has consistently constituted a termination [sic] offense." *Id.* at ¶ 16. Thus, he forwarded his recommendation of termination to Dan Weisend ("Weisend"), the human resources manager at the AutoZone Distribution Center where Martin worked. *Id.* at ¶ 17.

Martin arrived at work the next day and Snyder took him to Weisend's office. *Id.* at 194-196. Weisend then informed Martin that AutoZone had decided to "let him go for misleading information." *Id.* at 196-197.

Reduced to its essence, Martin's Amended Complaint asserts that AutoZone fired him because he utilized his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2617, filed a workers' compensation claim, and took time off to fulfill his Army duties. (Doc. # 22). Additionally, Martin's Amended Complaint alleges claims for violations of Ohio's workers' compensation act, Ohio public policy, and promissory estoppel. *Id.* AutoZone moves for summary judgment on each of Martin's claims. (Doc. # 30).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

**I.    FMLA**

Martin first asserts that AutoZone fired him in retaliation for utilizing his FMLA leave to care for his mother. (Doc.# 22 at ¶¶ 49-56). AutoZone denies that allegation.

Martin admits that he has no evidence–direct or circumstantial–to support his retaliation claim. Rather, all Martin proffers is his subjective belief that AutoZone fired him because it was tired of him missing work.[2] (Martin Dep. 203-204). Consequently, he is unable to establish a

---

[2] Martin stated in his deposition that several individuals told him that they had heard that he was fired because of "FMLA issues." (Martin Dep. 211-214). The Court is unable to consider such hearsay statements when ruling on AutoZone's motion for summary judgment.

*prima facie* case of retaliation, which requires him to establish that: (1) he availed himself of a protected right under the FMLA by notifying AutoZone of his intent to take leave, (2) he was adversely affected by an employment decision, and (3) there is a causal connection between the protected activity and the adverse employment action. *McMillian v. Potter*, 130 Fed. Appx. 793, 796 (6th Cir. 2005); *Skrjanc*, 272 F.3d at 314. It is important to note that Martin's burden in establishing a *prima facie* case is not intended to be an onerous one. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001).

The third element is at issue here. As stated above, Martin admits that he has no evidence to show a causal connection between his taking the FMLA leave and his termination. (Martin Dep. 203-204). Martin's mere subjective beliefs, without more, are simply insufficient to establish his *prima facie* case and are patently deficient to withstand AutoZone's motion for summary judgment. In addition, Martin admitted that AutoZone: (1) gave him the FMLA time he requested; (2) treated him fairly with respect to his FMLA leave; and (3) did not treat him any differently when he returned from his FMLA leave. *Id.* at 65-68, 88-89, 93, 94 107. Hence, the Court **GRANTS** AutoZone's motion for summary judgment on Martin's FMLA retaliation claim.

II.   USERRA

    A.   STATUTORY CLAIM

Martin also contends that his Army obligations were a motivating factor in AutoZone's decision to terminate him instead of offering more progressive discipline. (Doc.# 22 at ¶ ¶ 57-

---

*Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

65). AutoZone denies this allegation. (Doc. # 30).

The Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311 *et seq.*, basically prohibits employers from discriminating against individuals who serve in the armed services.   The act provides, in relevant part:

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
>
> (b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter [38 USCS §§ 4301 et seq.], (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter [38 USCS §§ 4301 et seq.], or (4) has exercised a right provided for in this chapter [38 USCS §§ 4301 et seq.]. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.
>
> (c) An employer shall be considered to have engaged in actions prohibited--
> (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or
> (2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter [38 USCS §§ 4301 et seq.], (B) testimony or making of a statement in or in connection with any proceeding under this chapter [38 USCS §§ 4301 et seq.], (C) assistance or other participation in an investigation under this chapter [38 USCS §§ 4301 et seq.], or (D) exercise of a right provided for in this chapter [38 USCS §§ 4301 et seq.], is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

38 USCS § 4311.  "The scope of § 4311 is very broad, covering discrimination in initial employment, reemployment, retention in employment, and promotion." *Curby v. Archon,* 216

F.3d 549, 557 (6th Cir. 2000).

"The Congressional Record and the courts which have interpreted USERRA indicate that the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983), is used to determine whether an employer discharged a reservist in violation of USERRA." *Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608, 617 (D. Va. 1999). Under this legal framework, a claimant must first establish a *prima facie* case of discrimination by showing by a preponderance of the evidence that his protected status was a motivating factor in the adverse employment action. *Curby*, 216 F.3d at 557.

To establish a certain factor as a motivating factor, a claimant need not show that it was the sole cause of the employment action, but rather that it is one of the factors that "a truthful employer would list if asked for the reasons for its decision." *Kelley v. Maine Eye Care Ass'n*, 37 F. Supp. 2d 47, 54 (D. Maine 1999); *see also Robinson v. Morris Moore*, 974 F. Supp. 571, 575 (E.D. TX 1997). Indeed, "military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Robinson*, 974 F. Supp. at 576 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)).

Once again Martin's admissions prove fatal to his ability to establish his *prima facie* case. Specifically, Martin admits that he has no evidence to support his contention that his duties as an army reservist were a motivating factor in AutoZone's decision to terminate him. (Martin Dep. 204-205). Moreover, Martin testified that AutoZone always allowed him to take the requisite time off to fulfill his military obligations and that AutoZone always treated him fairly. *Id.* at 27, 57, 73, 80, 82, 107, 108, 117, 122. Furthermore, he fails to allege that AutoZone demoted him or failed to promote him because of his reservist status. Consequently, the Court

10

**GRANTS** AutoZone's motion for summary judgment on Martin's USERSSA claim. (Doc. # 30).

    B.    **PUBLIC POLICY CLAIM**

Additionally, Martin alleges that AutoZone wrongfully terminated him in violation of Ohio public policy as espoused in the USERRA. (Doc. #22 at ¶¶ 82-88). In particular, Martin maintains that his reservist status was a motivating factor in AutoZone's decision to retaliate against him by terminating him. *Id.* AutoZone denies Martin's allegation on this score and moves for summary judgment. (Doc. # 30 at 21).

The elements of the tort of wrongful discharge in violation of Ohio public policy are that: (1) a clear public policy exists in a statute, regulation, or common law (the clarity element); (2) discharging employees under circumstances like those involved in the present case would jeopardize the policy (the jeopardy element); (3) the discharge at issue was motivated by conduct related to the policy (the causation element); and (4) there was no overriding business justification for the discharge (the overriding justification element). *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 321 (Ohio 1997).

Unfortunately for Martin, this Court held that the USERRA provides adequate remedies such that the public policies established by the USERRA are not jeopardized by denying a plaintiff the ability to pursue a tort action for a violation of public policy. *Schmauch v. Honda of Am. Mfg., Inc.*, 311 F. Supp. 2d 631, 635 (S.D. Ohio 2003). As a result, the Court concluded "[t]he USERRA provides its own adequate remedy, which forecloses the need for a separate public policy tort claim." *Id.* at 636.

11

Thus, under *Schmach*, Martin is unable to assert an Ohio public policy wrongful termination claim based on the USERRA. AutoZone's motion for summary judgment on that claim is **GRANTED**. (Doc. # 30).

### III. OHIO'S WORKERS' COMPENSATION ACT

#### A. STATUTORY CLAIM

Third, Martin argues that AutoZone fired him in retaliation for his filing a workers' compensation claim after he injured his neck on July 3, 2002. (Doc. # 22 at ¶ ¶ 66, 74). AutoZone denies Martin's claim, and moves for summary judgment. (Doc. # 30).

Ohio Revised Code § 4123.90 states:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

In order to maintain a claim under O.R.C § 4123.90, Martin must establish that he was injured on the job, filed a claim for workers' compensation, and was discharged by AutoZone in contravention of O.R.C. § 4123.90. *Wilson v. Riverside Hospital*, 479 N.E.2d 275, 277 (Ohio 1985). Once Martin establishes his *prima facie* case, the burden shifts to AutoZone to produce a legitimate, nondiscriminatory reason for the termination. *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 727 N.E.2d 137, 139-140 (Ohio Ct. App. 1999). Finally, if the employer provides a nonretaliatory reason, the employee must prove that the reason was pretextual. *Id.* Martin must show that he was retaliated against because he or she pursued workers' compensation benefits. *Id.* The burden of proving that AutoZone had a retaliatory motive remains at all times on

Martin. *Id.* In determining whether there was retaliation, the Court may consider whether punitive action such as bad performance reports were issued after the claim was filed, the length of time between the claim and the discharge, changes in salary level, hostile attitudes emerging, and whether legitimate reasons exist for the discharge. *Id.* (internal citations omitted).

There is no question that Martin sprained his shoulder while working at AutoZone. (Doc.# 22 at ¶ 68). Similarly, no debate exists as to whether Martin filed a workers' compensation claim. *Id.* at ¶ 69. Rather, the parties dispute the third element–whether AutoZone fired Martin in retaliation for filing a workers' compensation claim. AutoZone resolutely argues that it fired Martin for providing false information and failing to clock out; Martin's Amended Complaint asserts that his filing the worker's compensation claim was the reason he was fired. (Harrison Decl. ¶ 24; Doc. # 22 at ¶ ¶ 71, 72).

The Court notes that Martin has not offered any evidence that AutoZone rejected or delayed his workers' compensation claim or that the company took any other retaliatory action in response to the filing of his claim. In fact, Martin remained employed by AutoZone for nearly a year after his claim was filed. (Martin Dep. 205-206). Martin also failed to allege that AutoZone decreased his salary, filed negative performance reviews against him, or evinced a hostile attitude towards him. To the contrary, Martin admitted that AutoZone always treated him fairly. (Martin Dep. 46-50). Consequently, the Court holds that Martin failed to sustain his *prima facie* case and the Court **GRANTS** AutoZone's motion for summary judgment on this claim. *See Covucci v. Serv. Merch. Co.*, 115 Fed. Appx. 797, 800 (6th Cir. 2004).

**B.    PUBLIC POLICY CLAIM**

Martin also asserts that AutoZone wrongfully discharged him in violation of Ohio public

policy for filing a workers' compensation claim. (Doc.# 22 at ¶ ¶ 75-81). AutoZone correctly points out that this claim cannot stand because Martin failed to establish that AutoZone terminated him in retaliation for his filing a workers' compensation claim. (Doc. # 30 at 16-17).

Once again, the elements of the tort of wrongful discharge in violation of Ohio public policy are that: (1) a clear public policy exists in a statute, regulation, or common law (the clarity element); (2) discharging employees under circumstances like those involved in the present case would jeopardize the policy (the jeopardy element); (3) the discharge at issue was motivated by conduct related to the policy (the causation element); and (4) there was no overriding business justification for the discharge (the overriding justification element). *Kulch v. Structural Fibers, Inc.*, 677 N.E.2d 308, 321 (Ohio 1997).

The Court stated above that Ohio Rev. Code § 4123.90 prohibits employers from taking retaliatory action against employees who file workers' compensation claims. But the Court also held above that Martin failed to show that his termination was motivated by his filing a workers compensation claim. Thus, Martin cannot establish the causation element here, and the Court **GRANTS** AutoZone's motion for summary judgment on Martin's Ohio public policy wrongful termination claim based on O.R.C. § 4123.90. *See Covucci*, 115 Fed. Appx. at 800.

IV. **PROMISSORY ESTOPPEL**

Lastly, Martin asserts a claim for promissory estoppel. Specifically, he claims that he only went to Klein's office on August 18, 2003 because Snyder gave him permission to go. Martin maintains that but for his detrimental reliance on Snyder's giving him permission, he would have remained at work and would not have been terminated. (Doc. # 22 at ¶ ¶ 89-99; Martin Dep. at 146-147, 173). AutoZone responds that Martin was terminated for providing

false information and for failing to clock out while attending to personal business.  (Doc. # 30 at 22).

Promissory estoppel is an exception to the employment-at-will doctrine.   The elements of promissory estoppel include: "a promise, clear and unambiguous in its terms; reliance by the party to whom the promise is made; that the reliance was reasonable and foreseeable; and that the party claiming estoppel was injured by the reliance." *Healey v. Republic Powdered Metals, Inc.*, 85 Ohio App.3d 281, 284 (1992).  The claimant must demonstrate detrimental reliance on specific promises of job security to create an exception to the employment-at-will doctrine. *Rigby v. Fallsway Equip. Co.*, 779 N.E.2d 1056, 1061 (Ohio Ct. App. 2002).

Snyder merely told Martin he could go to Klein's office; he did not make a specific promise of job security to Martin.  Moreover, AutoZone fired Martin for providing false statements and failing to clock out, not because he went to see Klein.  (Harrison Decl. at ¶ 24).  Consequently, the Court **GRANTS** AutoZone's motion for summary judgment on Martin's promissory estoppel claim.  (Doc. # 30).

## CONCLUSION

AutoZone's motion for summary judgment is **GRANTED**.  (Doc. # 30).  The Clerk shall enter judgment accordingly and terminate the case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

**IT IS SO ORDERED.**

   /s/   Gregory L. Frost  
**GREGORY L. FROST**  
**UNITED STATES DISTRICT JUDGE**